CENTRAL HUDSON GAS & ELECTRIC CORPORATION, Consolidated Edison Company of New York, Inc. and Niagara Mohawk Power Corporation, Plaintiffs,

v.

BENJAMIN F. SHAW COMPANY, Defendant.

No. 78 Civ. 3015.

United States District Court, S. D. New York.

Dec. 20, 1978.

Gould & Wilkie, by M. Wade Kimsey, New York City, for plaintiffs.

Max E. Greenberg, Trayman, Cantor, Reiss & Blaskey, by Louis Cantor and Todd L. Herbst, New York City, for defendant.

## MEMORANDUM AND ORDER

OWEN, District Judge.

This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201, which defendant has moved to dismiss for failure to state a claim. The dispute arose out of a contract for the construction of an electric generating plant in Roseton, New York. Plaintiffs Central Hudson Gas & Electric Corporation, Consolidated Edison Company of New York, and Niagara Mohawk Power Corporation, are the owners of the new plant. They hired Burns & Roe Construction Corp. ("BRCC") as their general contractor. By agreement with BRCC, plaintiffs retained the right to approve any subcontractors BRCC proposed to use for constructing certain portions of the electric generating plant. Plaintiffs agreed to reimburse BRCC for all costs of settlement, litigation, or arbitration of any claims as-

serted against BRCC by subcontractors. It was understood that, as owners of the plant, plaintiffs would be liable to subcontractors for any award BRCC was unable to pay.

Defendant Benjamin F. Shaw Company was retained by BRCC under a subcontract to supply certain piping systems. Defendant commenced work in 1970 and by mid-1973 had substantially completed the subcontract work for which it was being paid by BRCC on a regular basis. On December 8, 1973, during testing of a generating unit at Roseton, the boiler imploded causing great damage and making the entire unit inoperable. On February 28, 1974, the contract between defendant and BRCC was terminated and defendant's final invoice to BRCC showed a balance of $244,188.02 due on the contract. BRCC refused to pay this final invoice, and on January 31, 1975, defendant filed a claim for $244,188.02 with the American Arbitration Association under an arbitration clause in the subcontract.

On May 6, 1975, because of the boiler implosion, plaintiffs sued defendant and numerous others in Supreme Court, New York County, for $125,000,000 in damages. Negotiations for settlement of this claim and of the arbitration claim against BRCC were commenced, and on October 27, 1975, plaintiffs and defendant herein signed a mutual general release agreement. The release agreement settled the boiler damage claims but expressly excepted the pending arbitration claim filed by defendant against BRCC.[1] However, on September 26, 1977, two years after the release was signed, defendant increased its arbitration claim by more than fourfold, from $244,188.02 to $1,326,529 or, in the alternative, to $1,864,-596 under a *quantum meruit* theory. BRCC

objected to these increased claims in the arbitration proceeding but the panel denied its motion to dismiss claims in excess of $244,186.02, giving BRCC leave to renew its objections at the conclusion of the arbitration hearings.

Defendant's continued pursuit of its revised claim has greatly expanded the scope of the issues in the arbitration proceeding. Plaintiffs contend that they will have to pay the additional cost and expense to BRCC of the prolonged arbitration, and face a potential liability to defendant of at least five times the amount originally understood by plaintiff to be its maximum potential liability to defendant under the mutual general release agreement.

Plaintiffs argue that by the terms of the mutual general release of October 27, 1975 defendant is barred from subsequently changing and increasing its then existing arbitration claim against BRCC. Plaintiffs seek a declaratory judgment to this effect, and injunctive relief restraining defendant from pursuing, entering or enforcing any judgment against plaintiffs or BRCC in excess of the original claim for $244,188.02. Plaintiffs also claim damages of $75,000 for extra costs and expenses which will be necessarily incurred to oppose defendant's prosecution of increased claims in the arbitration proceeding.

In its motion to dismiss, defendant argues there is no basis for declaratory relief here because (a) plaintiffs have no standing to challenge the decision of the arbitrators or to involve this court in the arbitration proceeding; (b) plaintiffs have an adequate remedy at law for any alleged breach of the mutual general release agreement; and (c) no actual controversy exists because plain-

---

1. With respect to the claims of defendant against BRCC, the mutual general release agreement provides as follows at page 9:

It is understood and agreed between the parties that nothing herein, including the provisions of paragraphs (1), (2) and (3) hereof, shall be deemed to deal with or affect in any manner the specific claim made by SHAW against BURNS and ROE CONSTRUCTION CORPORATION for which SHAW has heretofore filed an arbitration demand against

BURNS and ROE CONSTRUCTION CORPORATION or the specific counterclaim made by BURNS and ROE CONSTRUCTION CORPORATION against SHAW that has heretofore been asserted in such arbitration proceeding, and no party hereto agrees to the release of any other party hereto with respect to said claim and counterclaim or to hold any other party hereto harmless with respect thereto.

tiff's obligation to pay an arbitration award against BRCC is contingent upon a panel decision in defendant's favor.

■ None of the defendant's contentions warrant dismissal of the complaint. In the first place, plaintiffs are not seeking an order directing or restraining any action by the arbitrators in the proceedings between defendant and BRCC. Plaintiffs seek only a declaration of defendant's obligation under the mutual general release and an injunction restraining *defendant* from asserting or enforcing claims in violation of that agreement. The issue therefore is whether this controversy is appropriate for declaratory relief.

■ The availability of alternative remedies is no bar to declaratory relief in an actual controversy within the court's jurisdiction. Declaratory Judgment Act, 28 U.S.C. § 2201; Fed.R.Civ.P. 57. Furthermore, an actual controversy may exist where a party seeks a declaratory judgment to "avoid the risk of damages or other untoward consequence." *Keener Oil & Gas Co. v. Consolidated Gas Utilities Corp.*, 190 F.2d 985, 989 (10th Cir. 1951). See also *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

■ Declaratory judgment is a discretionary remedy created by a statute that is to be

> . . . liberally construed to accomplish the purpose intended, i. e., to afford a speedy and inexpensive method of adjudicating legal disputes without invoking the coercive remedies of the old procedure, and to settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships.

*Beacon Construction Co., Inc. v. Matco Electric Company*, 521 F.2d 392, 397 (2d Cir. 1975), quoting *Aetna Casualty & Surety Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937). In the instant case, this appears to be an appropriate form of relief. Declaratory judgment as to the binding effect of the mutual general release will greatly clarify the legal relationship between the parties. Both parties will be spared uncertainty as to the effect of an arbitration award in the pending proceedings between defendant and BRCC, not to mention time and expense arbitrating unnecessary issues.

In accordance with the foregoing, defendant's motion to dismiss is denied. To ensure prompt adjudication of this case, the parties are ordered to appear before me on January 4, 1979, at 5:00 p. m. for a conference.

So Ordered.